UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Leymis V.
and Sandra O.,

       Plaintiffs,

v.

Matthew G. Whitaker,[1] Kirstjen Nielsen,
Robert Cowan, Leslie Tritten, Lee Cissna,
Donald Neufeld, U.S. Department of
Homeland Security, and U.S. Citizenship
and Immigration Services,

       Defendants.

Case No. 18-cv-00733 (JNE/SER)
ORDER

This case involves the interplay between two subsections of the Immigration and Nationality Act ("INA"): the designation of Temporary Protected Status ("TPS") under § 1254a and the adjustment of status to Lawful Permanent Resident ("LPR") under § 1255. The sole issue before the Court is whether TPS beneficiaries are deemed "inspected and admitted" to satisfy the threshold requirement for adjustment of status. The Court holds that they are.

## BACKGROUND

Two statutory provisions are at the heart of this case. The first provision, § 1254a, authorizes the Attorney General to grant TPS to immigrants from countries experiencing armed conflict, natural disaster, or other extraordinary circumstances. 8 U.S.C.

---

[1] The Court has substituted Matthew G. Whitaker, the Acting Attorney General, for Jefferson B. Sessions, III. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P 25(d).

§ 1254a(b)(1)(A)-(B). The TPS statute provides two primary benefits to TPS beneficiaries: temporary protection from removal and work authorization. *Id.* § 1254a(a)(1)-(2). Additionally, "for purposes of adjustment of status under section 1255," the statute requires the TPS beneficiary "to be considered as being in, and maintaining, lawful status as a nonimmigrant." *Id.* § 1254a(f)(4).

The second provision, § 1255, governs the adjustment of immigration status from nonimmigrant to LPR. As a threshold matter, § 1255(a) requires a person to have been "inspected and admitted" into the United States before the Attorney General may adjust her status. *Id.* § 1255(a).

The parties disagree as to whether a grant of TPS satisfies § 1255(a)'s threshold requirement. Plaintiffs argue that the plain language of § 1254a(f)(4) establishes that TPS beneficiaries should be considered inspected and admitted for purposes of adjustment of status under § 1255(a). Defendants disagree. Defendants assert that because § 1254a(f)(4) does not specifically address § 1255(a)'s threshold requirement, a TPS beneficiary must have been separately inspected and admitted into the United States.

The facts asserted in Plaintiffs' Amended Complaint are not in dispute. Plaintiffs are two TPS beneficiaries whose LPR applications were denied by U.S. Citizenship & Immigration Services ("USCIS"). Plaintiffs, Leymis V. and Sandra O., are both citizens of El Salvador who entered the United States unlawfully—without inspection and admission—in October 2000 and May 1993 respectively. In 2001, after the Attorney General designated El Salvador as a TPS country, both Plaintiffs applied for TPS status. Plaintiffs disclosed their unlawful entries in their applications. The former Immigration

& Naturalization Service ("INS") approved both Plaintiffs' applications for TPS and subsequent renewals thereafter. On January 8, 2018, however, the Secretary of Homeland Security terminated El Salvador's TPS designation, effective September 9, 2019.

In 2017, Leymis V.'s U.S. citizen husband and Sandra O.'s U.S. citizen child petitioned for immigrant visas for Plaintiffs as immediate relatives. Simultaneous to their relatives' applications, Plaintiffs also sought a family-based adjustment of their status to LPR. In response, USCIS issued a request for evidence of lawful admission into the United States. Leymis V. provided documentation of her TPS grant and a copy of *Bonilla v. Johnson*, 149 F. Supp. 3d 1135 (D. Minn. 2016). In *Bonilla*, the district court held that a grant of TPS satisfies the "inspection and admission" requirement to adjust to LPR status under § 1255(a). *Id.* at 1142. Sandra O. submitted copies of her employment authorization documents to confirm continuous TPS and a legal argument highlighting *Bonilla* and other similar decisions. USCIS nevertheless denied both Plaintiffs' applications asserting that a grant of TPS is not an admission.

USCIS stated in both instances that there is no right of administrative appeal. Plaintiffs commenced this action for review under the Administrative Procedures Act ("APA") before this Court.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Arena Holdings*

*Charitable, LLC v. Harman Prof'l, Inc.*, 785 F.3d 292, 293 (8th Cir. 2015). In this case, the parties have agreed that there are no material issues of fact. Therefore, resolution of the legal question and entry of judgment is appropriate at this stage of the proceeding.

The APA governs the Court's review of agency actions. Under the APA, the Court must set aside an agency action, finding, or conclusion that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). In reviewing an agency action, the Court applies the two-step analysis set forth in *Chevron*. *Chevron USA v. Natural Resources Defense Council*, 467 U.S. 837 (1984); *Ortega-Marroquin v. Holder*, 640 F.3d 814, 818 (8th Cir. 2011) (applying *Chevron*). First, the Court determines "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Courts use "traditional tools of statutory construction" to determine whether Congress has unambiguously expressed its intent. *Id.* at 843 n.9. If the meaning of the statute is unambiguous, then both the courts and agencies "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. When "Congress has supplied a clear and unambiguous answer to the interpretive question at hand," the Court need not defer to the agency's interpretation. *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018).

If, however, the Court determines that the statute is ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Courts may defer to an agency interpretation even when the agency is not exercising its formal rule-making authority. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944). The weight of deference, if so given, depends on "the

4

thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 140.

## DISCUSSION

This is a case of statutory interpretation. The essential question for this Court is whether the inclusion of the term "nonimmigrant" in § 1254a(f)(4) plainly means that the TPS beneficiary has been "inspected and admitted" to satisfy the threshold requirement of § 1255(a). Given the meaning of "nonimmigrant" in the statutory scheme, the Court holds that it does.

A grant of TPS satisfies § 1255(a)'s threshold requirement because an alien who has obtained lawful status as a nonimmigrant has necessarily been inspected and admitted. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). A review of the statutory scheme reveals that the immigration laws repeatedly associate obtaining nonimmigrant status with inspection and admission to the United States. *See, e.g.,* 8 U.S.C. § 1182(d)(1) ("Nothing in this section shall be regarded as prohibiting the Immigration and Naturalization Service from instituting removal proceedings against an alien admitted as a nonimmigrant . . . for conduct or a condition that was not disclosed to the Attorney General prior to the alien's admission as a nonimmigrant under section 1101(a)(15)(S) of this title."); § 1184(b) (every alien "shall be presumed to be an immigrant until he

establishes to the satisfaction of . . . the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status"). By consistently linking nonimmigrant status with inspection and admission, Congress attached significance to the term nonimmigrant. *See Ramirez v. Brown*, 852 F.3d 954, 960 (9th Cir. 2017) (analyzing the use of the term "nonimmigrant" under the immigration laws). Accordingly, the Court agrees with the Ninth Circuit's conclusion that "by the very nature of obtaining lawful nonimmigrant status [under § 1254a(f)(4)], the alien goes through inspection and is deemed 'admitted.'" *Ramirez*, 852 F.3d at 960.

This interpretation is further supported by the fact that the application and approval process for TPS shares many of the same attributes as the inspection and admission process for nonimmigrants. The Ninth Circuit in *Ramirez* outlined these similarities in detail:

> Like an alien seeking nonimmigrant status, an alien seeking TPS must establish that he meets the identity and citizenship requirements for that status, usually by submitting supporting documentation like a passport. Similarly, an alien on either track must adequately demonstrate that he is eligible to be admitted to the United States, with the possibility that some grounds of inadmissibility may be waived in individual cases at the Attorney General's discretion.
>
> Once the request for nonimmigrant status or TPS has been submitted, the application is scrutinized for compliance—sometimes supplemented with an interview of the applicant—then approved or denied by USCIS.

*Id.* (citations omitted). Because both procedures are similarly rigorous, the Court finds that Congress intended that a TPS grant would have the same legal effect as obtaining nonimmigrant status.

The Court's reading of both statues is in line with other courts that have considered the issue. In fact, most other courts presented with this question have similarly concluded that a full and plain reading of the immigration laws requires courts to view a grant of TPS as satisfying inspection and admission. *See e.g., Ramirez*, 852 F.3d at 960; *Flores v. U.S. Citizenship and Immigration Services*, 718 F.3d 548, 553-54 (2013); *Figueroa v. Rodriguez*, CV 16-8218 PA, 2017 WL 3575284, at *4 (C.D. Cal. Aug. 10, 2017); *Bonilla v. Johnson*, 149 F. Supp. 3d 1135, 1138-39 (D. Minn. 2016); *Medina v. Beers*, 65 F. Supp. 3d 419, 428-29 (E.D. Penn. 2014). Because the Court finds that the statute's language is clear, the Court need not afford deference to the agency's interpretation. *See Pereira*, 138 S. Ct. at 2113.

The Court finds Defendants' arguments to the contrary unconvincing. First, Defendants contend that the Eighth Circuit's decision in *Roberts v. Holder*, 745 F.3d 928 (8th Cir. 2014) supports their position. Defendants read *Roberts* as limiting "admissions" under the immigration laws to two contexts: (1) port-of-entry inspection and (2) post-entry adjustment of status to LPR. Defendants, however, read too much into *Roberts*. The Eighth Circuit did not explicitly limit an "admission" to these two contexts. Nor did it address whether other forms of post-entry adjustment of status, like a TPS grant, constitutes an admission. Moreover, by acknowledging that § 1255(b) "treats *adjustment itself* as an 'admission,'" the Eighth Circuit concluded that "[t]he immigration statutes may be fairly read as treating post-entry adjustment as a substitute for port-of entry inspection." *Id.* at 933 (emphasis in original). This reasoning supports Plaintiffs' argument that the immigration laws allow for inspection and admission to occur

7

subsequent to actual physical entry in the United States—like when TPS status is later granted to a beneficiary who entered unlawfully.

Defendants further assert that the requirements of being "inspected and admitted" under § 1255(a) and "being in, and maintaining, lawful status" under § 1254a(f)(4) are separate and distinct. Defendants cite to the Eleventh Circuit's decision in *Serrano v. U.S. Attorney General*, 655 F.3d 1260, 1265 (11th Cir. 2011), which held that the fact that "an alien with Temporary Protected Status has 'lawful status as a nonimmigrant' for purposes of adjusting his status does not change § 1255(a)'s threshold requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled." For support, Defendants parse the language of § 1255, which separates the requirement of inspection and admission, § 1255(a), from the requirement "to maintain continuously a lawful status," § 1255(c)(2). But Defendants' interpretation is misguided. Without support, Defendants assume that the meaning of § 1254a(f)(4) is identical to § 1255(c)(2).[2]

The Court rejects Defendants' interpretation for two reasons. First, there are meaningful differences between the language used in §§ 1254a(f)(4) and 1255(c)(2). *Compare* § 1254a(f)(4) ("being in, and maintaining, lawful status as a nonimmigrant")

---

[2] The cases Defendants cite for support do not address the meaning of § 1254a(f)(4) nor its relation to § 1255(c). *See, e.g., Gomez v. Lynch*, 831 F.3d 652 (5th Cir. 2016) (examining whether a person who was physically inspected and admitted at the border while in temporary status, and subsequently loses that temporary status, also loses their admission under § 1255); *Dhuka v. Holder*, 716 F.3d 149 (5th Cir. 2013) (examining whether plaintiff failed to maintain continuous lawful status under § 1255(c)); *Young Dong Kim v. Holder*, 737 F.3d 1181 (7th Cir. 2013) (same).

*with* § 1255(c)(2) ("maintain continuously a lawful status since entry into the United States"). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Johnson v. United States*, 559 U.S. 133, 147 (2010). By including the word "nonimmigrant" in § 1254a(f)(4), Congress intended to give this word meaning. As discussed above, the Court holds that a plain reading of "nonimmigrant" signifies inspection and admission since nonimmigrant status "is a very specific type of status entailing admission by a customs officer under such designation." *Medina v. Beers*, 65 F. Supp. 3d 419, 431 (E.D. Penn. 2014).

Second, Defendants' proposed reading "would limit § 1254a(f)(4)'s effect to one subsection in § 1255—specifically, § 1255(c)(2)—because those two provisions both refer to being in 'lawful status' rather than being 'admitted.'" *Ramirez*, 842 F.3d at 962; *see also Flores*, 718 F.3d at 553. This reading would require the Court to ignore the plain language of § 1254a(f)(4), which refers to § 1255 in its entirety. 8 U.S.C. § 1254a(f)(4) ("for purposes of adjustment of status under *section 1255* of this title") (emphasis added).

Finally, both parties assert that the legislative history provides additional support for their position. The Court need not wade through this thicket, however, because the Supreme Court has instructed that where "[t]he text is clear" courts "need not consider this extra-textual evidence." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 942 (2017).

## CONCLUSION

In short, § 1254a(f)(4) allows a TPS recipient to be considered "inspected and admitted" under § 1255(a). Accordingly, under §§ 1254a(f)(4) and 1255(a), Plaintiffs, who have been granted TPS, meet the threshold requirement for the adjustment of status. Because the Government's interpretation is contrary to the plain language of these statutes, the Court concludes that the agency's decision in this case was arbitrary and capricious. Accordingly, the Court reverses the agency's decision and remands to USCIS for further review consistent with this opinion.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion for Summary Judgment [ECF. No. 24] is GRANTED.

2. Defendants' Motion to Dismiss [ECF. No. 13] is DENIED.

3. This matter is REMANDED to the United States Citizenship and Immigration Service for further proceedings consistent with this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 21, 2018

                                                                         s/ Joan N. Ericksen
                                                                         JOAN N. ERICKSEN
                                                                         United States District Judge